[Cite as *Ohio Civ. Rights Comm. v. Myers*, 2014-Ohio-144.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

OHIO CIVIL RIGHTS COMMISSION          :

      Plaintiff-Appellant          :          C.A. CASE NO.    25752

v.          :          T.C. NO.    12CV1991

PHILIP MYERS          :          (Civil appeal from
                                     Common Pleas Court)

      Defendant-Appellee          :

          :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the 17th day of January, 2014.

. . . . . . . . . .

MEGAN M. HUDSON, Atty. Reg. No. 0086574, Assistant Attorney General, 30 East Broad Street, 15th Floor, Columbus, Ohio 43215
      Attorney for Plaintiff-Appellant

NICHOLAS E. SUBASHI, Atty. Reg. No. 0033953 and LAUREN K. EPPERLEY, Atty. Reg. No. 0082924, The Greene Town Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
      Attorneys for Defendant-Appellee

. . . . . . . . . .

FAIN, J.

      **{¶ 1}**   Plaintiff-appellant, the Ohio Civil Rights Commission, appeals from a

judgment of the Montgomery County Court of Common Pleas dismissing its complaint against defendant-appellee Philip Myers under Civ.R. 12(B)(6). The Commission contends that the trial court erred, because its complaint states a claim against Myers upon which relief can be granted. We agree with the Commission as to its claim under R.C. 4112.02(H)(12), but disagree as to its claims under R.C. 4112.02(H)(1), (15), and (16). Accordingly, that part of the judgment of the trial court dismissing the Commission's claims under R.C. 4112.02(H)(1), (15), and (16) is Affirmed; that part of the judgment of the trial court dismissing the Commission's claim under R.C. 4112.02(H)(12) is Reversed; and this cause is Remanded for further proceedings on the Commission's surviving claim.

### I.   Myers Is a Not-So-Good Neighbor

{¶ 2}   As alleged in the complaint, Myers resides at 108 Nimitz Drive, which is part of a multi-unit housing structure in Riverside, Ohio. In June 2010, Dotty Podiak moved into the attached adjacent residence at 110 Nimitz Drive. The properties are managed by Overlook Mutual Homes.

{¶ 3}   Podiak has a hearing impairment, and she has two animal assistant dogs, both of which are Labradors. One of the dogs, Brittany, is trained to respond to sign language commands and to alert Podiak to door bells, alarm clocks, smoke detectors, and other common noises within a home. The property manager for the housing units notified Myers that Podiak's dogs were animal assistants that she had for her disability.

{¶ 4}   The Commission alleged that Myers "harassed and intimidated" Podiak and her animal assistants due to Podiak's disability. Myers mocked Podiak's use of sign

language and repeatedly whistled on his front porch and hit a stick on his porch, which caused the dogs to alert Podiak to those noises. Myers complained to Overlook that Podiak had animal assistants; eleven days later, he "falsely complained that [Podiak] intentionally used her animal assistants to frighten him." About a month later, Myers called the Riverside police to falsely allege that Podiak brought her animal assistants out of her home to intimidate him. Myers also allegedly knocked over a flower pot on his property and falsely reported to Overlook that Podiak's animal assistants were responsible for the damage. The Commission alleged that Myers's behavior forced Podiak to have a friend care for her animal assistants when she was gone for the day and forced her (Podiak) to look for alternative housing.

{¶ 5} By late July 2010, Podiak felt she could no longer live at 110 Nimitz Drive and applied for an apartment in another area. A little less than a month later, Podiak moved out of 110 Nimitz Drive, allegedly due to Myers's conduct.

## II. The Course of Proceedings

{¶ 6} Podiak filed a sworn housing discrimination charge with the Commission against Myers. The Commission conducted a preliminary investigation and determined that it is probable that Myers engaged in unlawful discriminatory practices. The Commission attempted, unsuccessfully, to achieve voluntary compliance. The Commission notified Myers and Podiak of their respective rights to elect to proceed with the administrative hearing process or to proceed in common pleas court. Myers elected to address the matter in a civil action. The Commission authorized the Office of the Attorney General to file a

civil action in the trial court.

{¶ 7} The Commission brought this action against Myers, alleging that he violated Ohio's Fair Housing Act, specifically, R.C. 4112.02(H)(1), (12), (15), and (16). The Commission sought a determination that Myers committed unlawful discriminatory practices in violation of those provisions and sought an injunction permanently restraining him from engaging in unlawful discriminatory practices with regard to housing based on disability. The Commission also requested an order that Myers pay actual and punitive damages, as well as reasonable attorney fees, court costs, expert witness fees (if any), and all other litigation expenses.

{¶ 8} Myers moved to dismiss the complaint pursuant to Civ.R. 12(B)(6). He asserted that the Commission's claims must fail, as a matter of law, because Ohio's Fair Housing Act, R.C. 4112.02(H), "is limited to conduct related to housing transactions. The alleged dispute between these neighbors has absolutely nothing to do with a housing transaction." Myers relied on the statutory language and *Graves v. Van Buskirk*, 9th Dist. Summit No. 14785, 1991 WL 21545 (Feb. 20, 1991), which he asserts held that R.C. 4112.02(H) does not apply to harassment by a neighbor. The Ninth District stated that, "[b]y the plain terms of the statute, R.C. 4112.02(H) is limited in scope to housing transactions and related matters." *Id.* at *5. Myers further argued that Ohio does not recognize a "hostile housing environment" claim and that the allegations in the complaint do not rise to the level of actionable conduct.

{¶ 9} The trial court granted Myers's motion, and dismissed the Commission's complaint. After quoting the statutory provisions at issue, the trial court noted that the

provisions generally "are tailored to those individuals who are engaged in the negotiation and exchange of housing and/or real estate. * * * Thus, a quick reading of these statutes would imply that they do not cover interactions between neighbors." The trial court also discussed *Graves*, which applied the rule of ejusdem generis to "decline to extend R.C. 4112.02(H)(1) beyond discriminatory practices in the transfer of housing rights." *Id.*, quoting *Graves* at *5. The trial court reasoned:

> * * * Here, sections (H)(1), (H)(15), and (H)(16) all required the applicable individuals to be involved in some form of a sale, transfer, assignment, rental agreement, lease, sublease, or financial agreement. These requirements are then followed by, if at all, the phrases "or otherwise deny or make unavailable." According to the rule of ejusdem generis, this phrase is strictly defined and qualified by the string of clearly defined words that precede it. Therefore, it can only be used in the context of a transaction in which the transfer of real property is involved. In the immediate case, Defendant was not selling, leasing, or managing the home in which Plaintiff lived. He was simply a neighbor, and the law under R.C. 4112.02(H) does not apply to neighbors.
>
> Since Defendant was just a neighbor, and R.C. 4112.02(H)(1), (15), or (16) does not apply to him, section (H)(12) is equally inapplicable since there has not been a violation of "any right granted or protected by division (H) of [R.C. § 4112.02]."

{¶ 10} The Commission appeals from the dismissal of its complaint, setting forth

the following assignments of error:

THE LOWER COURT IMPROPERLY FOUND THAT R.C. 4112.02(H) DOES NOT APPLY TO CONDUCT BETWEEN NEIGHBORS.

THE LOWER COURT IMPROPERLY FOUND THAT R.C. 4112.02(H)(12) CANNOT BE ALLEGED ALONE.

### III.   Standard of Review

{¶ 11}   In this case, the trial court dismissed the Commission's complaint pursuant to Civ.R. 12(B)(6).   "A motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Civ.R.12(B)(6), tests the sufficiency of a complaint. In order to prevail, such a complaint must demonstrate that the plaintiff can prove no set of facts entitling him to relief.  *O'Brien v. University Community Tenants Union, Inc*. (1975), 42 Ohio St.2d 242, 327 N.E.2d 753, * * *, at syllabus.   The court must construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint as true, and make all reasonable inferences in favor of the plaintiff.  *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, * * *."   *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 16 (2d Dist.).

{¶ 12}   A trial court's dismissal of an action pursuant to Civ.R. 12(B)(6) is subject to de novo review.  *Id.*

### IV.   The Acts Myers Is Alleged to Have Committed Are Not Within
### the Scope of the Acts Prohibited by R.C. 4112.02(H)(1) and (15)

{¶ 13}   Ohio's Fair Housing Act defines unlawful discriminatory practices related to housing accommodations.   R.C. 4112.02(H).   Under the Act, it is unlawful for "any person" to:

(1) Refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of * * * disability * * *;

* * *

(15) Discriminate in the sale or rental of, or otherwise make unavailable or deny, housing accommodations to any buyer or renter because of a disability of any of the following: (a) The buyer or renter; (b) A person residing in or intending to reside in the housing accommodations after they are sold, rented, or made available; (c) Any individual associated with the person described in division (H)(15)(b) of this section.

(16) Discriminate in the terms, conditions, or privileges of the sale or rental of housing accommodations to any person or in the provision of services or facilities to any person in connection with the housing accommodations because of a disability of any of the following: (a) That person; (b) A person residing in or intending to reside in the housing accommodations after they are sold, rented, or made available; (c) Any individual associated with the person described in division (H)(16)(b) of this section.

{¶ 14}   The protections afforded by Ohio's Fair Housing Act are to be "construed liberally for the accomplishment of its purposes."   R.C. 4112.08; *see also* R.C. 1.11 ("Remedial

laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice."). R.C. Chapter 4112 is comprehensive remedial legislation, designed to promote the prevention and elimination of discrimination and to protect those who are victims of discrimination. [1] *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, ¶ 27 ("R.C. Chapter 4112 is remedial legislation designed to prevent and eliminate discrimination."); *Smith v. Friendship Village of Dublin, Ohio, Inc.*, 92 Ohio St.3d 503, 505, 751 N.E.2d 1010 (2001); *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 133, 543 N.E.2d 1212 (1989); *Ohio Civ. Rights Comm. v. Triangle Invest. Co.*, 10th Dist. Franklin No. 10AP-1117, 2012-Ohio-1069, ¶ 9.

{¶ 15} The Commission asserts that the plain language of R.C. 4112.02(H) prohibits discriminatory conduct by neighbors by limiting certain behaviors by "any person." R.C. 4112.01(A)(1) defines a "person" as:

> one or more individuals, partnerships, associations, organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and other organized groups of persons. "Person" also includes, but is not limited to, any owner, lessor, assignor, builder, manager, broker, salesperson, appraiser, agent, employee, lending institution, and the state and all political subdivisions, authorities, agencies, boards, and commissions of the state.

---

[1] At oral argument, Myers's counsel appeared to agree that, under certain circumstances, Ohio's Fair Housing Act could apply to actions taken after acquisition of the property rights by a buyer or renter. In the case before us, we reject any suggestion that, as a matter of law, R.C. 4112.02(H) cannot apply because the alleged actions occurred after Podiak rented the property. *See, e.g., Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir.2009) (recognizing post-acquisition claims under 42 U.S.C. 3604(a) and (b) and 3617); *see also The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690 (9th Cir.2009) (FHA applies to post-acquisition conduct).

{¶ 16} Not only is Myers included under R.C. 4112.02(H) as an individual (be he a neighbor or otherwise), but by its terms, the definition of "person" applies to individuals or entities beyond the context of a transaction in which the transfer of real estate is involved.

{¶ 17} Myers argues that the *conduct* addressed by R.C. 4112.02(H) concerns only the transfer of property rights; therefore, R.C. 4112.02(H)(1), (15), and (16) do not apply to the conduct alleged in the complaint. Myers asserts that phrases such as "otherwise deny or make unavailable" or "in connection with housing accommodations" should be construed narrowly, in accordance with the rule of ejusdem generis, given that those phrases are preceded by more specific terms related to the purchase or rental of housing.

{¶ 18} Ejusdem generis (literally "of the same kind") is a rule of statutory construction. *Akron Home Med. Servs., Inc. v. Lindley*, 25 Ohio St.3d 107, 109, 495 N.E.2d 417 (1986). It states that "whenever words of general meaning follow the enumeration of a particular class, then the general words are to be construed as limited to those things which pertain to the particularly enumerated class." *Id*.; *see also State v. Willan*, 136 Ohio St.3d 222, 2013-Ohio-2405, 994 N.E.2d 400, ¶ 10.

{¶ 19} The Commission asserts that ejusdem generis should be applied only when a statute is to be strictly construed; Ohio's Fair Housing Act states that it is to be liberally construed. The Supreme Court of Ohio has stated that "[w]hen there is a listing of specific terms followed by a catchall word or phrase which is linked to the specific terms by the word 'other,' and the statute is to be strictly construed, we apply the doctrine of ejusdem generis." *Moulton Gas Serv. v. Zaino*, 97 Ohio St.3d 48, 2002-Ohio-5309, 776 N.E.2d 72, ¶ 14. *Moulton* involved the interpretation of a tax exemption statute, which is strictly construed. We do not interpret *Moulton* to mean that ejusdem generis can never apply to a statute that is to be liberally

construed.

{¶ 20}   Indeed, the Supreme Court of Ohio has applied the rule of ejusdem generis when interpreting R.C. Chapter 4112.  *Ohio Civil Rights Commission v. Lysyj*, 38 Ohio St.2d 217, 313 N.E.2d 3 (1974) (superseded by statute on other grounds).  The Supreme Court considered the features of enumerated establishments in determining whether a trailer park was a "public accommodation" under R.C. 4112.01(I).  (It held that it was.)  The Supreme Court cautioned, however, that, "like all rules of statutory construction, the doctrine is applicable only to the extent that it aids in ascertaining the true meaning of the statute."  *Id*. at 220.

{¶ 21}   To answer whether a neighbor can violate the Fair Housing Act, we focus on the statutory language.  In interpreting a statute, a court should always turn first to one cardinal canon before all others: "courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

{¶ 22}   R.C. 4112.02(H)(1) addresses the refusal to "sell, transfer, assign, rent, lease, sublease, or finance housing accommodations" or to "negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations."  The conduct listed in R.C. 4112.02(H)(1) revolves around the ability to obtain access to housing – selling, leasing, assigning, obtaining financing, etc.  Significantly, the proscriptive language is not limited to the sellers or lessors of property; R.C. 4112.02(H)(1) specifically mentions persons involved in the financing of housing accommodations, and the language is broad enough to encompass the myriad of persons whose participation in the rental or sale process affects the ability to access housing accommodations, such as lenders, real estate agents, insurers and

municipalities.

{¶ 23} With respect to R.C. 4112.02(H)(1), the meaning of "otherwise deny or make unavailable" must be construed in relation to the preceding specifically enumerated conduct. In this provision, "otherwise deny or make unavailable" relates to the terms sell, transfer, assign, rent, lease, sublease, finance, and negotiate. As the omnibus clause suggests, the specific conduct concerns actions that affect access to housing accommodations. Specifically, the particular class is the selling, rental, negotiation, etc., and the "same kind" – the "generis" – must be of that particular class. We see no reasonable interpretation that would place intimidation or harassment *by neighbors* within this group, without an allegation, absent here, that the neighbor denied the claimant access to (as opposed to peaceful enjoyment of) housing. *Contrast Evans v. Tubbe*, 657 F.2d 661 (5th Cir.1981) (plaintiff set forth arguable claims under 42 U.S.C. 3604(a) and 3617 against defendant who, due to plaintiff's race, erected a locked gate that blocked the only road providing access to plaintiff's property).

{¶ 24} Accordingly, we agree with Myers that, as a matter of law, the complaint has not stated a claim against him under R.C. 4112.02(H)(1). We note that this conclusion is consistent with numerous federal court decisions holding that 42 U.S.C. 3604(a), which is analogous to R.C. 4112.02(H)(1), applies to the availability, not habitability, of housing. *E.g.*, *Cox v. City of Dallas*, 430 F.3d 734 (5th Cir.2005) (citing cases). As stated by the Seventh Circuit, "Availability of housing is at the heart of § 3604(a)." *Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir.2009).

{¶ 25} R.C. 4112.02(H)(15) makes it unlawful to "discriminate in the sale or rental of, or otherwise make unavailable or deny, housing accommodations to any buyer or renter" due to

the disability of certain individuals. This provision is analogous to 42 U.S.C. 3604(f)(1), which makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of – (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter."

{¶ 26} R.C. 4112.02(H)(15) does not list a series of specific terms; rather, it prohibits "discrimination" in the sale or rental of property. Because R.C. 4112.02(H)(15), unlike R.C. 4112.02(H)(1), does not enumerate a "particular class" of behaviors, this provision does not lend itself to interpretation with the rule of ejusdem generis.

{¶ 27} As with R.C. 4112.02(H)(1), the phrase "otherwise make unavailable or deny" contained within R.C. 4112.02(H)(15) reflects a legislative intention to proscribe discriminatory conduct in the "sale or rental" of housing that renders housing unavailable. As with R.C. 4112.02(H)(1), R.C. 4112.02(H)(15) does not cover the alleged discriminatory conduct of the neighbor, who did not have the general ability to "deny" Podiak housing or make it "unavailable."

### V. The Acts Myers Is Alleged to Have Committed Are Not Within the Scope of the Acts Prohibited by R.C. 4112.02(H)(16)

{¶ 28} R.C. 4112.02(H)(16) makes it unlawful to "[d]iscriminate in the terms, conditions, or privileges *of the sale or rental* of housing accommodations to any person or *in the provision of services or facilities* to any person in connection with the housing accommodations" because of the disability of particular persons. (Emphasis added.) Notably, this provision does

not include the phrase "otherwise make unavailable or deny," which makes sub-section (H)(16) less expansive in this regard than subsections (H)(1) and (15).

{¶ 29} Cases under 42 U.S.C. 3604(f)(2), the analogous federal statute, often involve claims that the defendant failed to reasonably accommodate a claimant's disability. *E.g.*, *Astralis Condominium Assn. v. Secy., U.S. Dept. of Housing and Urban Dev.*, 620 F.3d 62 (1st Cir.2010); *Wood v. Briarwinds Condominium Assn. Bd. of Dirs.*, 2010 WL 724163 (11th Cir. Mar. 3, 2010); *Groner v. Golden Gate Gardens Apts.*, 250 F.3d 1039 (6th Cir.2001); *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891 (7th Cir.1996); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir.1995). That is not the allegation here.

{¶ 30} We do not see how Myers's alleged conduct, as Podiak's neighbor, constitutes discrimination in the terms, conditions, or privileges of the sale or rental of housing to Podiak. The "terms, conditions," and "privileges" of the rental of the apartment to Podiak are established in her contract of lease with her landlord, to which Myers is not a party. Nor is there any allegation that Myers was acting as the landlord's agent. We also do not see how Myers's alleged conduct constitutes discrimination "in the provision of services or facilities" to Podiak "in connection with [her] housing accommodations," since Myers was not providing services or facilities to Podiak.

## VI. The Acts Myers Is Alleged to Have Committed Are Within
## the Scope of the Acts Prohibited by R.C. 4112.02(H)(12)

{¶ 31} R.C. 4112.02(H)(12) provides that it is an unlawful discriminatory practice:

(H) For any person to do any of the following:

* * *

(12) Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person's having exercised or enjoyed or having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by division (H) of this section;

* * *

{¶ 32} The trial court concluded that the Commission could not state a claim under R.C. 4112.02(H)(12), because it could not establish a violation under another provision of R.C. 4112.02(H). We disagree.

{¶ 33} Pursuant to R.C. 4112.02(H), Podiak had a right to rent the property located at 110 Nimitz Drive free from discrimination on the basis of her disability. By its terms, R.C. 4112.02(H)(12) prohibits "any person" from coercing, intimidating, threatening or interfering with the exercise or enjoyment of that right. "Exercise or enjoyment" is broad language, which can be impacted by activities of individuals or entities separate from the contract to buy or lease housing accommodations. R.C. 4112.02(H)(12) covers the Commission's allegations against Myers.

{¶ 34} Numerous federal courts have also found that a neighbor's intimidating, threatening, and/or harassing conduct is actionable under 42 U.S.C. 3617, the federal statute analogous to R.C. 4112.02(H)(12). *E.g.*, *Chicago Title & Land Trust Co. v. Rabin*, 2012 WL 266387, *3 (N.D.Ill. Jan. 30, 2012) ("Courts consistently have applied § 3617 to 'threatening, intimidating, or extremely violent discriminatory conduct designed to drive an individual out of his home.'"); *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir.1991). The United

States Court of Appeals for the Sixth Circuit has commented that 42 U.S.C. 3617 "'reach[es] all practices which have the effect of interfering with the exercise of rights' under the federal fair housing laws. Thus, section 3617 has been applied to racially-motivated firebombings, sending threatening notes, exclusionary zoning, deflating appraisals because of discriminatory animus, and insurance redlining." *Campbell v. Robb*, 2006 WL 45253, *10 (6th Cir. Jan. 9, 2006), *quoting and citing Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir.1994).

**{¶ 35}** Recently, in *Wells v. Rhodes*, 928 F.Supp.2d 920 (S.D. Ohio 2013), the district court granted summary judgment under 42 U.S.C. 3617 to African-American plaintiffs against an area resident, who had burned a cross in the plaintiffs' front yard; written on the cross was "KKK will make you pay" and "nigger." While recognizing that there were few cases addressing intimidating or threatening acts against owners or renters after acquiring the property, the district court noted that the federal courts that have addressed such issues "have generally held that racially-motivated intimidating acts directed at a person's property are actionable under the FHA." *Id.*

**{¶ 36}** Nothing in R.C. 4112.02(H)(12) requires an aggrieved person to have a claim for a violation of another provision of R.C. 4112.02(H) in order to bring a claim under R.C. 4112.02(H)(12). Although there is some disagreement among the federal circuit and district courts, federal courts have frequently held that 42 U.S.C. 3617, which is analogous to R.C. 4112.02(H)(12), covers discrimination that occurs after acquiring or taking possession of the property, regardless of whether a violation of 42 U.S.C. 3603-3606 has occurred. Using a retaliation claim as an example, the United States Court of Appeals for the Sixth Circuit has

recently stated:

> * * * Section 3617 nowhere says that it comes into play only when a violation of one of these other sections has also occurred. An example confirms the freestanding nature of some § 3617 claims. Suppose Alice says to Bob, a prospective home buyer, "If a seller ever discriminates against you because of your race, sue him!" Eve, a racist eavesdropper, becomes enraged upon hearing this conversation and threatens to assault Alice. At this point, Eve has violated § 3617, regardless of whether she discriminated against Bob or otherwise violated the fair housing rights secured by §§ 3603–3606. Eve has "threaten[ed] ... [a] person," namely Alice. And this threat was "on account of [Alice's] having aided or encouraged any other person in the exercise or enjoyment of [a fair housing right]." Eve threatened Alice because Alice had encouraged Bob to protect himself against discrimination relating to housing. The statute requires no more.

*Hidden Village, LLC v. City of Lakewood*, Ohio, ___ F.3d ___, 2013 WL 5811642, * 7 (6th Cir.).

{¶ 37} In summary, based on the plain language of R.C. 4112.02(H)(12), a neighbor may be held liable for conduct that interferes with the exercise or enjoyment of a fair housing right by a person with a disability. No other violation of R.C. 4112.02(H) need be established. Such an interpretation is consistent with analogous federal case law. However, we caution, as did the United States Court of Appeals for the Seventh Circuit, that the Fair Housing Act was not intended to address mere quarrels among neighbors. *Halprin v. Prairie Single Family*

*Homes of Dearborn Park Assn.*, 388 F.3d 327, 329-30 (7th Cir.2004).

{¶ 38}  Myers argues that, even if claims against neighbors can be made under R.C. 4112.02(H), the allegations in the complaint are insufficient to state a claim against him.

{¶ 39}  Accepting the allegations in the complaint as true and construing them in the light most favorable to the Commission, Myers "harassed and intimidated" Podiak and her animal assistants due to Podiak's disability.  The Commission alleged that Myers mocked Podiak's use of sign language, intentionally made noises that caused the dogs to alert Podiak, and made false accusations to Overlook (the property manager) and the police regarding Podiak and her dogs.  Finally, the Commission alleged that Myers's behavior forced Podiak to have a friend help care for her animal assistants and ultimately caused Podiak to move to a different residence.  These allegations are sufficient to state a claim for violating R.C. 4112.02(H)(12).

## VII.   Conclusion

{¶ 40}  The Commission's First Assignment of Error is overruled with respect to R.C. 4112.02(H)(1), (15), and (16), and is sustained as to R.C. 4112.02(H)(12).  Its Second Assignment of Error is sustained.  That part of the judgment of the trial court dismissing the Commission's claims under R.C. 4112.02(H)(1), (15), and (16) is Affirmed; that part of the judgment of the trial court dismissing the Commission's claim under R.C. 4112.02(H)(12) is Reversed; and this cause is Remanded for further proceedings on the Commission's surviving claim.

. . . . . . . . . .

DONOVAN, J., concurs.

FROELICH, P.J., concurring in Parts IV and VI of the opinion, and dissenting as to Part V:

{¶ 41}   I agree with Judge Fain's conclusions in Parts IV and VI of his opinion that the Commission failed to state a claim upon which may be granted under R.C. 4112.02(H)(1) and (15) and that the Commission did state a claim under R.C. 4112.02(H)(12).   I dissent from the conclusion, in Part V, that the Commission did not state a claim under R.C. 4112.02(H)(16).

{¶ 42}   R.C. 4112.02(H)(16) makes it unlawful to "[d]iscriminate in the terms, conditions, or *privileges* of the sale or rental of housing accommodations to any person *or in the provision of services or facilities to any person in connection with the housing accommodations*" because of the disability of particular persons.   (Emphasis added.)   Notably, this provision does not include the phrase "otherwise make unavailable or deny."

{¶ 43}   Cases under 42 U.S.C. 3604(f)(2), the analogous federal statute, often involve claims that the defendant failed to reasonably accommodate a claimant's disability.   *E.g.*, *Astralis Condominium Assn. v. Secy., U.S. Dept. of Housing and Urban Dev.*, 620 F.3d 62 (1st Cir.2010); *Wood v. Briarwinds Condominium Assn. Bd. of Dirs.*, 2010 WL 724163 (11th Cir. Mar. 3, 2010); *Groner v. Golden Gate Gardens Apts.*, 250 F.3d 1039 (6th Cir.2001); *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891 (7th Cir.1996); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328 (2d Cir.1995).   That is not the allegation here.

{¶ 44}   Nevertheless, construing the language of R.C. 4112.02(H)(16) liberally, the statute arguably supports a claim against a neighbor for discrimination in the privileges of the rental accommodations or the provision of services or facilities in connection with the housing accommodations, based on a neighbor's creation of a hostile housing environment due to

disability. I note that the Ohio Supreme Court has not yet addressed whether a hostile housing environment claim exists under R.C. 4112.02(H), nor have other Ohio appellate districts. *See Ohio Civ. Rights Comm. v. Akron Metro Hous. Auth.*, 119 Ohio St.3d 77, 2008-Ohio-3320, 892 N.E.2d 415, ¶ 8; *McDonald v. Burton*, 2d Dist. Montgomery No. 24274, 2011-Ohio-6178, ¶ 177. However, several federal circuits have recognized such claims under 42 U.S.C. 3604(b), which provides similar protections for other protected classes.[2] *See DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir.1996); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir.1993).

**{¶ 45}** I would hold that the trial court erred when it concluded, as a matter of law, that the Commission could not state a claim against Myers under R.C. 4112.02(H)(12) and (H)(16), and I would remand for further proceedings as to both of those provisions.

. . . . . . . . . .

Copies mailed to:

Megan M. Hudson
Nicholas E. Subashi
Lauren K. Epperley
Hon. Gregory F. Singer

---

[2] 42 U.S.C. 3604(b) provides that it is an unlawful practice "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."